| Fill in this information to identify your case: |
| --- |
| United States Bankruptcy Court for the: |
| SOUTHERN DISTRICT OF FLORIDA |
| Case number *(if known)* _____   Chapter __11__ |

☐ Check if this an amended filing

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy
**06/24**

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
| --- | --- | --- |
| 1. | **Debtor's name** | **Clinical Care Pharmacy, LLC** |
| 2. | **All other names debtor used in the last 8 years**  Include any assumed names, trade names and *doing business as* names | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **27-2532103** |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
| --- | --- |
| **7500 S.W. 8th Street, Ste. 400**  **Miami, FL 33144**  Number, Street, City, State & ZIP Code | P.O. Box, Number, Street, City, State & ZIP Code |
| **Miami-Dade**  County | **Location of principal assets, if different from principal place of business**  Number, Street, City, State & ZIP Code |

| | | |
| --- | --- | --- |
| 5. | **Debtor's website** (URL) | **www.clinicalcaremc.com** |

6. **Type of debtor**

■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

Debtor   **Clinical Care Pharmacy, LLC**                                         Case number (*if known*) _____
         _____
                Name

**7.   Describe debtor's business**    A. *Check one:*

■ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☐ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes.
        **6211**

**8.   Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check **all** that apply*:

   ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725 (amount subject to adjustment on 4/01/25 and every 3 years after that).

   ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

   ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.

   ☐ A plan is being filed with this petition.

   ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

   ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

   ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9.   Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

■ No.
☐ Yes.

District _____  When _____  Case number _____
District _____  When _____  Case number _____

**10.  Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No
■ Yes.

Debtor     **Clinical Care Pharmacy, LLC**                                Case number (*if known*) _____
           Name

List all cases. If more than 1,
attach a separate list

| | Debtor | **See Exhibit 1 attached** | Relationship | _____ |
| | District | _____ | When | _____ | Case number, if known | _____ |

---

**11.  Why is the case filed in *this district?***

*Check all that apply:*

■  Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐  A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12.  Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No

☐ Yes.   Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard?     _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other     _____

**Where is the property?**     _____

Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes.     Insurance agency     _____

Contact name     _____

Phone     _____

---

**Statistical and administrative information**

**13.  Debtor's estimation of available funds**     .     *Check one:*

■ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

---

**14.  Estimated number of creditors**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

---

**15.  Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ■ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

---

**16.  Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ■ $100,000,001 - $500 million | ☐ More than $50 billion |

---

Debtor   **Clinical Care Pharmacy, LLC**                                    Case number (*if known*) _____
         Name

| Request for Relief, Declaration, and Signatures |
|---|

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on     **October 13, 2024**
                MM / DD / YYYY

**X /s/ Nicholas K. Campbell**                                    **Nicholas K. Campbell**
Signature of authorized representative of debtor                  Printed name

Title   **Chief Restructuring Officer**

**18. Signature of attorney**

**X /s/ Paul Steven Singerman**                     Date   **October 13, 2024**
Signature of attorney for debtor                            MM / DD / YYYY

**Paul Steven Singerman 378860**
Printed name

**Berger Singerman LLP**
Firm name

**1450 Brickell Avenue, Ste. 1900**
**Miami, FL 33131**
Number, Street, City, State & ZIP Code

Contact phone   **305-755-9500**        Email address   **singerman@bergersingerman.com**

**378860 FL**
Bar number and State

**EXHIBIT 1 to Voluntary Petitions[1]**

| Debtor Name | EIN | Date Filed | Case Number | District |
|---|---|---|---|---|
| Care Center Medical Group, LLC | 83-3309052 (FL) | 10/13/2024 | Pending | U.S. Bankruptcy Court, Southern District of Florida (Miami Division) |
| Care Center Network, LLC | 26-4795784 (FL) | 10/13/2024 | Pending | U.S. Bankruptcy Court, Southern District of Florida (Miami Division) |
| CCMC Physician Holdings, Inc. | 33-1244532 (FL) | 10/13/2024 | Pending | U.S. Bankruptcy Court, Southern District of Florida (Miami Division) |
| Clinical Care Pharmacy, LLC | 27-2532103 (FL) | 10/13/2024 | Pending | U.S. Bankruptcy Court, Southern District of Florida (Miami Division) |
| Florida Family Primary Care Center, LLC | 46-4435005 (FL) | 10/13/2024 | Pending | U.S. Bankruptcy Court, Southern District of Florida (Miami Division) |
| Florida Family Primary Care Center of Pasco, LLC | 32-0478570 (FL) | 10/13/2024 | Pending | U.S. Bankruptcy Court, Southern District of Florida (Miami Division) |
| Florida Family Primary Care Centers of Orlando, LLC | 99-4853086 (FL) | 10/13/2024 | Pending | U.S. Bankruptcy Court, Southern District of Florida (Miami Division) |
| Florida Family Primary Care Centers of Pinellas, LLC | 46-4457075 (FL) | 10/13/2024 | Pending | U.S. Bankruptcy Court, Southern District of Florida (Miami Division) |
| Florida Family Primary Care Centers of Tampa, LLC | 46-4440631 (FL) | 10/13/2024 | Pending | U.S. Bankruptcy Court, Southern District of Florida (Miami Division) |
| MB Medical Operations, LLC | 81-4488450 (DE) | 10/13/2024 | Pending | U.S. Bankruptcy Court, Southern District of Florida (Miami Division) |
| MB Medical Transport, LLC | 32-0513476 (DE) | 10/13/2024 | Pending | U.S. Bankruptcy Court, Southern District of Florida (Miami Division) |
| MBMG Holding, LLC | 85-3923880 (DE) | 10/13/2024 | Pending | U.S. Bankruptcy Court, Southern District of Florida (Miami Division) |
| MBMG Intermediate Holding, LLC | 85-3889320 (DE) | 10/13/2024 | Pending | U.S. Bankruptcy Court, Southern District of Florida (Miami Division) |

---

[1] For a detailed description of the relationship amongst the Debtors listed herein, please refer to the *Declaration of Nicholas K. Campbell in Support of Chapter 11 Petitions and First Day Pleadings*.

13181354-1

| Debtor Name | EIN | Date Filed | Case Number | District |
|---|---|---|---|---|
| Miami Beach Medical Centers, Inc. f/k/a Rodolfo Dumenigo, M.D., P.A. | 65-0603933 (FL) | 10/13/2024 | Pending | U.S. Bankruptcy Court, Southern District of Florida (Miami Division) |
| Miami Beach Medical Consultants, LLC | 26-2303737 (FL) | 10/13/2024 | Pending | U.S. Bankruptcy Court, Southern District of Florida (Miami Division) |
| Miami Medical & Wellness Center, LLC | 32-0432474 (FL) | 10/13/2024 | Pending | U.S. Bankruptcy Court, Southern District of Florida (Miami Division) |

13181354-1

2

**OMNIBUS WRITTEN CONSENT**
**FOR**
**SUN MBMG GP, LLC AND**
**MBMG ULTIMATE HOLDING, L.P. AND ITS DIRECT AND INDIRECT**
**SUBSIDIARIES, INCLUDING,**
**MBMG HOLDING, LLC,**
**MBMG INTERMEDIATE HOLDINGS, LLC,**
**MB MEDICAL OPERATIONS, LLC,**
**MB MEDICAL TRANSPORT, LLC,**
**CARE CENTER NETWORK, LLC,**
**CARE CENTER MEDICAL GROUP, LLC,**
**CLINICAL CARE PHARMACY, LLC,**
**FLORIDA FAMILY PRIMARY CARE CENTER, LLC,**
**FLORIDA FAMILY PRIMARY CARE CENTER OF PASCO, LLC,**
**FLORIDA FAMILY PRIMARY CARE CENTERS OF TAMPA, LLC,**
**FLORIDA FAMILY PRIMARY CARE CENTERS OF PINELLAS, LLC,**
**FLORIDA FAMILY PRIMARY CARE CENTERS OF ORLANDO, LLC,**
**CCMC PHYSICIAN HOLDINGS, INC.,**
**MIAMI MEDICAL & WELLNESS CENTER, LLC,**
**MIAMI BEACH MEDICAL CONSULTANTS, LLC, AND**
**MIAMI BEACH MEDICAL CENTERS, INC.**

**October 13 , 2024**

The undersigned, being the sole member of the Special Committee (the "Special Committee") of Sun MBMG GP, LLC, a Cayman limited liability Company ("Sun MBMG"), for Sun MBMG and in Sun MBMG's capacity as the General Partner of MBMG Ultimate Holding, L.P., a Delaware limited partnership ("MBMG Ultimate Holding"), and MBMG Ultimate Holding, in its capacity as the sole member of MBMG Holding, LLC, a Delaware limited liability company ("MBMG Holding"), and MBMG Holding, in its capacity as the sole member of MBMG Intermediate Holding, LLC, a Delaware limited liability Company ("MBMG Intermediate"), and MBMG Intermediate, in its capacity as the sole member of MB Medical Operations, LLC, a Delaware limited liability company ("MB Medical Operations"), and MB Medical Operations, in its capacity as the sole member of MB Medical Transport, LLC, a Delaware limited liability company ("MB Medical Transport"), Care Center Network, LLC, a Florida limited liability company ("CCN"), Care Center Medical Group, LLC, a Florida limited liability company ("CCMG"), Clinical Care Pharmacy, LLC, a Florida limited liability company ("CCP"), and Florida Family Primary Care Center, LLC, a Florida limited liability company ("FFPCC"); and FFPCC in its capacity as the sole member of Florida Family Primary Care Center of Pasco, LLC, a Florida limited liability company ("FFPasco"), Florida Family Primary Care Centers of Tampa, LLC, a Florida limited liability company ("FFTampa"), Florida Family Primary Care Centers of Pinellas, LLC, a Florida limited liability company ("FFPinellas"), and Florida Family Primary Care Centers of Orlando, LLC, a Florida limited liability company ("FFOrlando"); and MB Medical Operations, in its capacity as the sole shareholder, and Paul McBride in his capacity as the sole director (the "Director"), of CCMC Physician Holdings, Inc., a Florida corporation ("CCMC"), and CCMC, in its capacity as the sole member of Miami Medical & Wellness Center,

1

LLC, a Florida limited liability company ("MMWC") and Miami Beach Medical Consultants, LLC, a Florida limited liability company ("MBMC"), and CCMC in its capacity as the sole shareholder, and the Director, in his capacity as the sole director of Miami Beach Medical Centers Inc., a Florida corporation ("MBMC Inc.", and each of Sun MBMG, MBMG Ultimate Holding, MBMG Holding, MBMG Intermediate, MB Medical Operations, MB Medical Transport, CCN, CCMG, CCP, FFPCC, FFPasco, FFTampa, FFPinellas, FFOrlando, CCMC, MMWC, and MBMC collectively, the "Group Companies," and each, a "Group Company"), do hereby waive all formal requirements, including the necessity of holding a formal or informal meeting, and any requirements for notice, and pursuant to the applicable state limited liability company act and pursuant to the limited liability company agreement, operating agreement, shareholders' agreement, or bylaws of each Group Company, as applicable, and do hereby consent in writing to the adoption of the following resolutions, taking such action by this written consent (this "Written Consent") in lieu of a meeting of the Special Committee, the Director, and each of the undersigned members or sole shareholders of the Group Companies (collectively, the "Approving Entities"), with effect from the time of the execution of this Written Consent by the signatories set forth below on the date set forth above (the "Effective Time").

WHEREAS, the Approving Entities have reviewed and considered the operational condition of sixteen (16) of the Group Companies (excluding Sun MBMG and MBMG Ultimate) (each, a "BK Entity," collectively, the "BK Entities") and the business of the BK Entities on the date hereof, including the historical performance of the BK Entities, the assets of the BK Entities, the current and long-term liabilities of the BK Entities, the liquidity of the BK Entities, the strategic alternatives available to the BK Entities, and the impact of the foregoing on the business, creditors and other parties in interest of the BK Entities; and

WHEREAS, the Approving Entities have received, reviewed and considered the recommendations of the legal and financial advisors of the BK Entities as to the relative risks and benefits of pursuing a reorganization under chapter 11 of title 11 of the United States Code (11 U.S.C. §§ 101 et seq., the "Bankruptcy Code"), and the Approving Entities have had an opportunity to consult with the legal and financial advisors of the BK Entities and have considered each of the strategic alternatives available to the BK Entities; and

WHEREAS, the Approving Entities have received, reviewed, and considered entering into a commitment for debtor-in-possession financing for a senior secured super priority debtor-in-possession financing credit facility in an aggregate amount up to $10,000,000.00 (the "DIP Facility"), the Approving Entities have received and reviewed the credit agreement and other documents relating to the DIP Facility (collectively, the "DIP Credit Agreement") with the lenders set forth therein, and the Approving Entities agree that the BK Entities should obtain the benefits of the DIP Facility and desire that the BK Entities enter into the DIP Credit Agreement; and

WHEREAS, in connection with the Chapter 11 bankruptcy cases, the Approving Entities have received, reviewed, and considered entering into the that certain Asset Purchase Agreement, by and among MB Medical Operations, MB Medical Transport, CCN, CCP, CCMG, FFPCC, FFTampa, FFPasco, FFOrlando, CCMC, MMWC, MBMC Inc., and MBMC (MBMC, collectively with MB Medical Operations, MB Medical Transport, CCN, CCP, CCMG, FFPCC, FFTampa, FFPasco, FFOrlando, CCMC, MMWC, and MBMC Inc., the "Sellers", and each, a "Seller"), MB

2

Medical Operations, as the representative of the Sellers (the "Sellers' Representative"), and Conviva Medical Center Management, LLC, a Delaware limited liability company ("Buyer") (the "Asset Purchase Agreement"), whereby the Sellers propose to sell, transfer, and assign to Buyer, and Buyer proposes to purchase, acquire and assume from the Sellers, the Purchased Assets and Assumed Liabilities (as such terms are defined in the Asset Purchase Agreement), and the Approving Entities agree that the Sellers should obtain the benefits of the Asset Purchase Agreement and desires that the Sellers enter into the Asset Purchase Agreement, in accordance with the bid and sale procedures as may be approved by the Bankruptcy Court with jurisdiction over the bankruptcy cases the BK Entities intend to commence; and

WHEREAS, the Approving Entities, on behalf of the BK Entities, have reviewed the Asset Purchase Agreement, and the terms and provisions thereof, as well as all documents related thereto and/or contemplated thereby, and believe that (i) the BK Entities will receive substantial benefit by the Sellers entering into the Asset Purchase Agreement and consummating the transactions contemplated therein, and (ii) it is fair, advisable and in the best interests of the BK Entities to approve the terms and provisions thereof, as well as all documents related thereto and/or contemplated thereby (collectively, the "Transaction Documents"), the execution, delivery and performance of same and each of the transactions contemplated thereby (collectively, the "Transaction"); and

WHEREAS, in the business judgment of the Approving Entities, it is in the best interests of the BK Entities and their creditors, employees, and other parties in interest that a petition be filed by each BK Entity seeking relief under the provisions of the Bankruptcy Code; and

WHEREAS, the Approving Entities desire that the BK Entities file or cause to be filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Petitions") and the following resolutions are adopted by this Written Consent:

I.      Chapter 11 Cases

IT IS THEREFORE RESOLVED, that the Approving Entities hereby approve the filing of Petitions on behalf of the BK Entities in the United States Bankruptcy Court for the Southern District of Florida (collectively, the "Chapter 11 Cases") on or about October 13, 2024; and it is further

RESOLVED, that appropriate employees and consultants of the BK Entities are hereby authorized, directed and empowered (i) to file the Petitions for the BK Entities, (ii) to commence the Chapter 11 Cases, and (iii) to execute and deliver any and all documents and to perform any and all such acts as are reasonable, advisable, expedient, convenient, proper and necessary to effect any of the foregoing; and it is further

RESOLVED, that the Approving Entities hereby authorize any officer, manager, or director, including, any chief restructuring officer or assistant chief restructuring officer of the BK Entities and any member of the Special Committee (collectively, the "Authorized Officers"), and each of them, acting alone or in any combination, on behalf of the BK Entities, to prepare, execute and/or verify and to cause to be filed, and any other applicable officer, be and each hereby is

authorized to attest to, any and all documents required by, necessary or appropriate to, the filing and administration of the Chapter 11 Cases, including but not limited to the Petitions, as well as all other ancillary documents (including, but not limited to, petitions, schedules, statements, lists, motions, applications, DIP Credit Agreement(s), the Transaction Documents, objections, responses, affidavits, declarations, complaints, pleadings, disclosure statements, plans of reorganization or liquidation and other papers or documents), including but not limited to, any amendments, modifications or supplements thereto (collectively, the "Chapter 11 Documents"); and it is further

RESOLVED, that any of the Authorized Officers, who may act without the joinder of any other officer, is hereby authorized to execute and deliver the Chapter 11 Documents in the name and on behalf of each of the BK Entities, and otherwise to take all actions (including, without limitation, (i) negotiation, execution, delivery, and filing of any agreements, certificates, or other instruments or documents, (ii) the payment of any retainer or consideration for any professional retained by the BK Entities, in the Chapter 11 Cases, and (iii) the payment of expenses and taxes as any such Authorized Officer may deem necessary, appropriate, or advisable (such acts to be conclusive evidence that such Authorized Officer deemed the same to be necessary, appropriate, or advisable) in order to commence and administer the Chapter 11 Cases, and all acts of the Authorized Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects; and it is further

II.    Retention of Professionals

RESOLVED, that the Approving Entities hereby approve and ratify the employment by the BK Entities of the law firm of Berger Singerman LLP ("Berger Singerman"), to represent the BK Entities as their general bankruptcy counsel and to assist the BK Entities in carrying out their duties under the Bankruptcy Code and all related matters, and to take any and all actions appropriate to advance the BK Entities' rights, including the preparation of pleadings and filings in the Chapter 11 Cases; and in connection therewith, the Authorized Officers be and each of them, acting alone or in any combination, hereby is, authorized, directed and empowered, on behalf of and in the name of the BK Entities to execute appropriate retention agreements with Berger Singerman, pay appropriate retainers to Berger Singerman prior to and immediately upon the filing of the Chapter 11 Cases, and to cause to be filed an appropriate application for authority to retain the services of Berger Singerman; and it is further

RESOLVED, that the Approving Entities hereby reapprove and ratify the employment by the BK Entities of Meru, LLC ("Meru"), to provide the restructuring and other services detailed therein to the BK Entities and to provide the services of a Chief Restructuring Officer, and in connection therewith, the Authorized Officers be and each of them, acting alone or in any combination, hereby is, authorized, directed and empowered, on behalf of and in the name of the BK Entities to execute appropriate retention agreements with Meru, pay appropriate retainers to Meru prior to and immediately upon the filing of the Chapter 11 Cases, and to cause to be filed an appropriate application for authority to retain the services of Meru; and it is further

RESOLVED, that the Approving Entities hereby reapprove and ratify the employment by the BK Entities of Oppenheimer & Co. Inc. ("Oppenheimer"), as investment bankers to represent and assist the BK Entities in carrying out their duties under the Bankruptcy Code, and to take to provide the restructuring and other services detailed therein to the BK Entities and to provide the services of a Chief Restructuring Officer, and in connection therewith, the Authorized Officers be and each of them, acting alone or in any combination, hereby is, authorized, directed and empowered, on behalf of and in the name of the BK Entities to execute appropriate retention agreements with Oppenheimer, pay appropriate retainers to Oppenheimer prior to and immediately upon the filing of the Chapter 11 Cases, and to cause to be filed an appropriate application for authority to retain the services of Oppenheimer; and it is further

RESOLVED, that the Approving Entities hereby reapprove and ratify the employment by the BK Entities of Epiq Corporate Restructuring, LLC ("Epiq") as notice and claims agent to represent and assist the BK Entities in carrying out their duties under the Bankruptcy Code, and to take any and all actions to advance the BK Entities' rights and obligations, and in connection therewith, the Authorized Officers be and each of them, acting alone or in any combination, hereby is, authorized, directed and empowered, on behalf of and in the name of the BK Entities to execute appropriate retention agreements with Epiq, pay appropriate retainers to Epiq prior to and immediately upon the filing of the Chapter 11 Cases, and to cause to be filed an appropriate application for authority to retain the services of Epiq; and it is further

RESOLVED, that the Authorized Officers be, and each of them, acting alone or in any combination, hereby is, authorized, directed and empowered, on behalf of and in the name of the BK Entities to employ any other individual and/or firm as professionals or consultants or financial advisors to the BK Entities as are deemed necessary to represent and assist the BK Entities in carrying out their duties under the Bankruptcy Code, and in connection therewith, the Authorized Officers acting alone or in any combination, hereby are, authorized, directed and empowered, on behalf of and in the name of the BK Entities to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 Cases, and cause to be filed an appropriate application for authority to retain the services of such firms; and is further

III.    Debtor-in Possession Financing

RESOLVED, that the Authorized Officers be, and hereby are, authorized, directed, and empowered, on behalf of and in the name of the BK Entities, (A) to obtain post-petition financing according to the terms negotiated by the senior management of the BK Entities including under debtor-in-possession credit facilities or relating to the use of cash collateral, and (B) to secure the payment and performance of any post-petition financing by (i) pledging or granting liens and mortgages on, or security interest in, all or any portion of the BK Entities' assets, including all or any portion of the issued and outstanding capital stock, partnership interests, or membership interests of any subsidiaries of the BK Entities whether now owned or hereafter acquired, and (ii) entering into or causing to be entered into such security agreements, pledge agreements, control agreements, intercreditor agreements, mortgages, deeds of trust and other agreements as are necessary, appropriate, or desirable to effectuate the intent of, or matters reasonably contemplated or implied by, this resolution in such form, covering such collateral and having such other terms and conditions as are approved or deemed necessary, appropriate or desirable by the Authorized

5

Officer executing the same, the execution thereof by such Authorized Officer to be conclusive evidence of such approval or determination; and it is further

RESOLVED, that the form, terms, and provisions of the DIP Facility, the DIP Credit Agreement, and each of the other DIP Facility Documents (as defined below), and the BK Entities' incurrence and performance of their obligations under the DIP Facility, the DIP Credit Agreement, and each of the other DIP Facility Documents (as defined below), including any borrowings thereunder, granting of liens on, or security interests in, all or any portion of the BK Entities' assets as provided therein, and the consummation of the transactions contemplated thereby, be, and hereby are, in all respects authorized and approved; and further resolved, that each of the Authorized Officers be, and hereby is, authorized and empowered to execute and deliver, and to cause the BK Entities to incur and perform their respective obligations under the DIP Facility and the DIP Credit Agreement and each of the agreements, documents, and instruments contemplated by any of the foregoing or requested by the DIP Facility lenders in connection with any of the DIP Facility (together with the DIP Credit Agreement, the "DIP Facility Documents"), in the name and on behalf of the  BK Entities under their seals or otherwise, substantially in the forms presented to the Approving Entities, with such changes therein and modifications and amendments thereto as any Authorized Officer may in his or her sole discretion approve, which approval shall be conclusively evidenced by his or her execution thereof; and it is further

RESOLVED, that each of the Authorized Officers be, and hereby is, authorized and empowered to execute and deliver any amendments, amendments and restatements, supplements, modifications, renewals, extensions, replacements, consolidations, substitutions, and extensions of the DIP Facility and the DIP Facility Documents that shall in their sole judgment be necessary, proper or advisable; and it is further

RESOLVED, that all acts and actions taken by the Authorized Officers prior to the date hereof with respect to the transactions contemplated by the DIP Credit Agreement and any of the other DIP Facility Documents be, and hereby are, in all respects confirmed, approved, and ratified; and it is further

IV.    Asset Purchase Agreement

RESOLVED, the Approving Entities find and deem the Transaction to be fair to, and desirable and in the best interests of, the BK Entities and hereby, as described further in the resolutions that follow, authorize and approve in all respects the Asset Purchase Agreement, the Transaction Documents, and the consummation of the Transaction, and it is further resolved, that each of the Authorized Officers be, and hereby is, authorized and empowered to execute and deliver, and to cause the BK Entities to incur and perform their respective obligations under the Asset Purchase Agreement and the Transaction Documents, as may be approved by the Bankruptcy Court with jurisdiction over the bankruptcy cases the BK Entities intend to commence; and it is further

RESOLVED, that each of the Authorized Officers be, and hereby is, authorized and empowered to execute and deliver any amendments, amendments and restatements, supplements, modifications,   schedules,   exhibits,   renewals,   extensions,   replacements,   consolidations,

substitutions, and extensions of the Asset Purchase Agreement and the Transaction Documents that shall in their sole judgment be necessary, proper or advisable; and it is further

RESOLVED, that all acts and actions taken by the Authorized Officers prior to the date hereof with respect to the transactions contemplated by the Asset Purchase Agreement and any of the other Transaction Documents be, and hereby are, in all respects confirmed, approved, and ratified; and it is further

V.    General Authorizations and Ratifications

RESOLVED, that the Authorized Officers be, and each of them acting alone or in any combination is, hereby authorized, directed and empowered from time to time in the name and on behalf of each of the BK Entities to (i) take such further actions and execute and deliver or cause to be executed and delivered, where necessary or appropriate, file (or cause to be filed) with the appropriate governmental authorities all such other certificates, instruments, guaranties, notices and documents as may be required or as such Authorized Officer may deem necessary, advisable or proper to carry out the intent and purpose of the foregoing resolutions, including the execution and delivery of any security agreements, pledges, financing statements and the like, (ii) perform the obligations of the BK Entities under the Bankruptcy Code, the DIP Facility, the DIP Credit Agreement, any other DIP Facility Documents, the Asset Purchase Agreement, and any other Transaction Documents, with all such actions to be performed in such manner, and all such certificates, instruments, guaranties, notices and documents to be executed and delivered in such form, as the Authorized Officer performing or executing the same shall approve, and the performance or execution thereof by such Authorized Officer shall be conclusive evidence of the approval thereof by such officer and by the BK Entities, and (iii) incur and pay such fees, expenses and other amounts as in his, her or their judgment shall be necessary, proper or advisable in order to fully carry out the intent and accomplish the purposes of each of the foregoing resolutions; and it is further

RESOLVED, that the Authorized Officers be, and each of them acting alone is, hereby authorized, directed and empowered from time to time in the name and on behalf of each of the BK Entities to adopt resolutions and otherwise exercise the rights and powers of the BK Entities, as such Authorized Officer may deem necessary, appropriate or desirable; and that thereupon such resolutions shall be deemed adopted as and for the resolutions of the BK Entities; and it is further

RESOLVED, that all of the acts and transactions relating to matters contemplated by the foregoing resolutions, which acts would have been approved by the foregoing resolutions except that such actions were taken prior to the execution of these resolutions, are hereby in all respects, confirmed, ratified and approved; and it is further

RESOLVED, that these resolutions and actions shall be the actions of the Approving Entities, and the Chief Executive Officer and Chief Restructuring Officer of each of the BK Entities is hereby directed to place this Written Consent with the records of the proceedings of the Approving Entities, and with the records of each of the BK Entities; and it is further

RESOLVED, that this Written Consent may be executed and delivered by electronic transmission with the same effect as delivery of an original.

[SIGNATURES ON FOLLOWING PAGES]

IN WITNESS WHEREOF, the undersigned have caused this Written Consent to be duly executed and delivered as of the date first above written.

**Special Committee of SUN MBMG GP, LLC, for itself, and on behalf of SUN MBMG GP, LLC, as the General Partner of MBMG Ultimate Holding, L.P., and on behalf of each of the Group Companies:**

_____
Elizabeth Abrams

**Sole Member of MBMG Holding, LLC:**

MBMG Ultimate Holding, L.P.

By: _____
Name: Paul McBride
Title:   President and CEO

**Sole Member of MBMG Intermediate Holding, LLC:**

MBMG Holding, LLC

By: _____
Name: Paul McBride
Title:   President and CEO

**Sole Member of MB Medical Operations, LLC:**

MBMG Intermediate Holding, LLC

By: _____
Name: Paul McBride
Title:   President and CEO

*[Signature Page to Written Consent]*

**Sole Member of MB Medical Transport, LLC, Care Center Network, LLC, Florida Family Primary Care Center, LLC, Care Center Medical Group LLC, and Clinical Care Pharmacy, LLC**

MB Medical Operations, LLC

By: _Paul M. McBride, II_

Name: Paul McBride

Title:   President and CEO

**Sole Member of Florida Family Primary Care Center of Pasco, LLC, Florida Family Primary Care Centers of Tampa, LLC, Florida Family Primary Care Centers of Pinellas, LLC, and Florida Family Primary Care Centers of Orlando, LLC**

Florida Family Primary Care Center, LLC

By: _Paul M. McBride, II_

Name: Paul McBride

Title:   President and CEO

**Sole Shareholder of CCMC Physician Holdings, Inc.**

MB Medical Operations, LLC

By: _Paul M. McBride, II_

Name: Paul McBride

Title:   President and CEO

**Sole Member of Miami Medical & Wellness Center, LLC and Miami Beach Medical Consultants, LLC**

CCMC Physician Holdings, Inc.

By: _Paul M. McBride, II_

Name: Paul McBride

Title:   President and CEO

*[Signature Page to Written Consent]*

**Sole Shareholder of Miami Beach Medical Centers, Inc.**

CCMC Physician Holdings, Inc.

By: _Paul M. McBride, II_ ____

Name: Paul McBride

Title:   President and CEO


**Sole Director of CCMC Physician Holdings, Inc. and Miami Beach Medical Centers, Inc.**

_Paul M. McBride, II_ ____

Paul McBride

*[Signature Page to Written Consent]*